USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 3/31/21

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Jeff Lucas, <br><br> Plaintiff, <br><br> –v– <br><br> Verizon Communications, Inc., et al., <br><br> Defendants. | 20-cv-5542 (AJN) <br><br> MEMORANDUM <br> OPINION & ORDER |

ALISON J. NATHAN, District Judge:

    Plaintiff Jeff Lucas initiated this action in the New York Supreme Court, alleging a variety of state law claims against Verizon Communications, Inc. and Verizon Media, Inc., his former employer.  Defendants removed the case to federal court on July 17, 2020.  Dkt. No. 1. Presently before the Court are Plaintiff's motion to remand and Defendants' motion to dismiss under Rule 12(b)(3) or, in the alternative, to transfer the case to the United States District Court for the District of New Jersey.  For the reasons that follow, Plaintiff's motion to remand is GRANTED, and Defendants' motion to dismiss or transfer is DENIED.

    **I.**    **Background**

    Plaintiff Jeff Lucas was hired by Oath Inc., now known as Verizon Media, in April 2018 to work as Vice President, Head of Advertising Sales.  Dkt. No. 5-2 at 33–58 ("Am. Compl.") ¶¶ 24–25; *see also* Dkt. No. 10, Lucas Decl., ¶ 2; Dkt. No. 11, Cavaleri Decl., Ex. 1; Dkt. No. 23 at 2.  Verizon Media is an indirectly wholly owned subsidiary of Verizon Communications.  *See* Dkt. No. 24, Johnstone Decl., ¶ 5.  Plaintiff's compensation package included, among other things, an equity incentive award of restricted stock units.  Dkt. No. 11, Ex. 1, at 3.  In September 2018, Plaintiff entered into the 2018 Restrictive Stock Unit Agreement with Verizon

in which he agreed, among other things, to be bound by noncompetition, nonsolicitation, and confidentiality obligations in exchange for restricted stock units. Dkt. No. 14, Ex. 2, 2018 Agreement § B. The 2018 Agreement also included a forum selection clause that indicated that "the parties consent to the non-exclusive jurisdiction and venue of the courts of the State of New Jersey, and the federal courts of the United States of America located in the State of New Jersey, over any action, claim, controversy or proceeding arising under this Exhibit B [to the 2018 Agreement], and irrevocably waive any objection they may now or hereafter have to the non-exclusive jurisdiction and venue of such courts." Dkt. No. 14, Ex. 1, 2018 Agreement § B(7). He reaffirmed those contractual obligations twice in 2019, and both 2019 contracts included the same noncompetition obligations and forum selection clauses. *See* Dkt. No. 14, Ex. 2, 2019 Agreements.

According to the Amended Complaint, Plaintiff soon became dissatisfied with the opportunities that were available to him in the company. Among other things, his compensation structure included a certain amount that was tied to the sales of premium content. Am. Compl. ¶ 28. But once he was at the company, he found that Verizon Media was not creating sufficient premium content to allow him to realize the amount of sales necessary to reach his bonus target; Plaintiff also alleges that while he brought this to the attention of Verizon Media executives, they failed to rectify the situation. *Id.* ¶ 32–43. In part because of that dissatisfaction, around two years after he was hired, Plaintiff sought a new employment opportunity with WarnerMedia to oversee advertising sales for premium television content. Am. Compl. ¶¶ 44–47, 55–56, 63. According to Plaintiff, executives at Verizon declined to waive the non-compete provision of the RSU Agreements. Am. Compl. ¶¶ 57–68.

On June 22, 2020, Plaintiff sued Defendants Verizon Communications and Verizon Media in the New York Supreme Court, County of New York, Commercial Division, seeking a declaratory judgment that the noncompetition restrictions in the 2018 and 2019 RSU Agreements were unenforceable. Dkt. No. 5-2 at 4–28. Two days later, he sought a temporary restraining order to enjoin enforcement of the restrictive covenant. Dkt. No. 5-3. On June 29, 2020, the motion for a temporary restraining order was denied, as Justice Jennifer Schecter found that Plaintiff had not demonstrated irreparable harm because he would be able to recover monetary damages in the form of lost earnings on a claim for tortious interference with business relations. Dkt. No. 5-2 at 29. On July 17, 2020, Plaintiff amended his complaint to seek damages for what he alleges was a tortious interference with the WarnerMedia employment opportunity. Dkt. No. 5, Ex. 2 at 33–58. That same day, Defendants removed the case to this Court, asserting that this Court had diversity jurisdiction over the action. Dkt. No. 1.

On July 24, 2020, Plaintiff moved to remand the case back to the New York Supreme Court, alleging that there was no complete diversity between the parties and that, as a result, this Court lacks subject matter jurisdiction. *See* Dkt. Nos. 9–12. Plaintiff is a resident of New York, and Verizon Communications is a Delaware corporation with its principal place of business in New Jersey. *See* Am. Compl. ¶¶ 4, 5; Def. Opp. Br. at 8. It is also undisputed that Verizon Media is also a Delaware corporation. *See* Am. Compl. ¶ 6; Def. Opp. Br. at 1, 8. The parties disagree, however, as to Verizon Media's principal place of business. In addition, Defendants contend that Verizon Media is merely a nominal defendant whose citizenship can be disregarded for purposes of assessing whether this Court has subject matter jurisdiction under 28 U.S.C. § 1332.

Also on July 24, 2020, Defendants moved to dismiss under Rule 12(b)(3) or, in the alternative, to transfer the case to the United States District Court for the District of New Jersey. Dkt. Nos. 13–14. Defendants allege that the forum selection clause of the RSU Agreements binds the parties to litigate this dispute in a New Jersey court. *See* Dkt. No. 14 at 5–11. Plaintiff contests that the forum selection clause is exclusive. *See* Dkt. No. 22 at 5–13.

Both motions are fully briefed, *see* Dkt. Nos. 22, 23, 25, 26.

## II.     Discussion

The parties dispute whether this Court has subject matter jurisdiction. Plaintiff contends that complete diversity does not exist because Plaintiff is a resident of New York and Verizon Media, Inc. has its principal place of business in New York. *See* Dkt. No. 12 ("Pl. Br.") at 4–6. Defendants contend that Verizon Media, Inc. is a nominal defendant whose domicile should be disregarded for purposes of assessing whether complete diversity exists, and they argue that Verizon Media, Inc.'s principal place of business is in New Jersey. Dkt. No. 23 ("Def. Opp. Br.") at 5–11. The Court concludes that Verizon Media is not a nominal defendant and that its principal place of business is in New York. Accordingly, this Court lacks subject matter jurisdiction over this action, and Plaintiff's motion to remand is granted.

### A.  Legal Standard

Where a motion to remand challenges the Court's subject matter jurisdiction to hear the case, courts ordinarily address it first. *See Calingo v. Meridian Res. Co. LLC*, No. 7:11-CV-628 (VB), 2011 WL 3611319, at *3 (S.D.N.Y. Aug. 16, 2011); *People of New York ex rel. Cuomo v. First Am. Corp.*, No. 07-CV-10397 (LTS) (HP), 2008 WL 2676618, at *1 (S.D.N.Y. July 8, 2008) ("Because the Court finds that it lacks subject matter jurisdiction of the action, Plaintiff's

motion to remand the case to New York State Supreme Court is granted. The Court will not address Defendants' motion to dismiss the complaint.").

"[F]ederal courts are courts of limited jurisdiction," and they "lack the power to disregard such limits as have been imposed by the Constitution or Congress." *Durant, Nichols, Houston, Hodgson, & Cortese–Costa, P.C. v. Dupont,* 565 F.3d 56, 62 (2d Cir. 2009) (quotation omitted). Under the federal removal statute, a defendant may "remove an action to the United States District Court in any civil action brought in a State court of which the district courts of the United States have original jurisdiction." *Purdue Pharma L.P. v. Kentucky*, 704 F.3d 208, 213 (2d Cir. 2013) (citation and internal quotation marks omitted). "Congress has granted district courts original jurisdiction over cases in which there is a federal question . . . and certain cases between citizens of different states, so long as the requirements of complete diversity and amount in controversy are met[.]" *Purdue Pharma L.P. v. Kentucky*, 704 F.3d 208, 213 (2d Cir. 2013) (citing 28 U.S.C. §§ 1331, 1332).

"A party seeking removal bears the burden of showing that federal jurisdiction is proper." *Montefiore Med. Ctr. v. Teamsters Local 272*, 642 F.3d 321, 327 (2d Cir. 2011). "Where, as here, jurisdiction is asserted by a defendant in a removal petition, it follows that the defendant has the burden of establishing that removal is proper." *United Food & Commercial Workers Union v. CenterMark Props. Meriden Square, Inc.*, 30 F.3d 298, 301 (2d Cir. 1994). "[R]emoval statutes are to be strictly construed against removal and all doubts should be resolved in favor of remand." *Am. Standard, Inc. v. Oakfabco, Inc.*, 498 F. Supp. 2d 711, 715 (S.D.N.Y. 2007) (citations omitted); *see also Purdue Pharma L.P.*, 704 F.3d at 213.

**B. Verizon Media is not a nominal defendant**

In opposing Plaintiff's motion to remand, Defendants argue that Verizon Media, is merely a nominal defendant whose citizenship should be disregarded for purposes of assessing whether this Court has subject matter jurisdiction over this action. *See* Def. Opp. Br. at 6–8. Plaintiff contests this point, arguing instead that Verizon Media, as the company that employed him, is a real party in interest.

"The Supreme Court has held that 'the "citizens" upon whose diversity a plaintiff grounds jurisdiction must be real and substantial parties to the controversy,'" and as a result "courts 'must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy.'" *Purdue Pharma L.P.*, 704 F.3d at 218 (quoting *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 460–61 (1980)). A party is deemed "nominal" when "that party has little or no interest in the outcome of the litigation and no cause of action or claim for relief is or could be stated against it." *Still v. DeBuono*, 927 F. Supp. 125, 129 (S.D.N.Y. 1996) (citation and internal quotation marks omitted). The burden of proving that a party is nominal falls on the party who is claiming nominal status. *See Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 461 (2d Cir. 1998). Where a party is attempting to assert the existence of diversity jurisdiction on the grounds that one of the parties is merely a nominal defendant, all doubts "must be resolved against removability and in favor of remand." *In re Vill. of Kiryas Joel, N.Y.*, No. 11-CV-8494 (ER), 2012 WL 1059395, at *4 (S.D.N.Y. Mar. 29, 2012); *see also Pampillonia*, 138 F.3d at 461. As the Second Circuit has explained, the defendant "must demonstrate, by clear and convincing evidence, either that there has been outright fraud committed in the plaintiff's pleadings, or that there is no possibility, based on the pleadings, that a plaintiff can state a cause of action against the [allegedly nominal defendant] in state court." *Pampillonia*, 138 F.3d at 461.

Defendants contend that Plaintiff's dispute is exclusively with Verizon Communications, because, according to them, the three causes of action in the Amended Complaint all relate to the 2018 and 2019 RSU Agreements, which Plaintiff entered into with Verizon Communications. *See* Def. Opp. Br. at 6–8.  The Court disagrees.

The second cause of action in the Amended Complaint alleges fraudulent inducement of contract.  Plaintiff claims that Tim Armstrong, the Chief Executive Officer of Oath (now named Verizon Media), made certain representations to Plaintiff regarding the company's commitment to increasing development of premium content when the company was recruiting Plaintiff.  *See* Am. Compl. ¶ 88.  Plaintiff also alleges that those promises were made in order to convince Plaintiff to accept a compensation structure that included one-third of Plaintiff's compensation as a form of bonus compensation relating to advertising sales related to that premium content.  *Id.* ¶ 89.  And Plaintiff alleges that he entered into the employment agreement as a result of those promises, and that after taking the job he was disappointed by the company's commitment to premium content, on which a significant part of his compensation depended.  *Id.* ¶ 90–92.

The elements of a fraudulent inducement of contract claim are similar under New York and New Jersey law.  In New York, "[t]o maintain a cause of action for fraudulent inducement of contract, a plaintiff must show 'a material representation, known to be false, made with the intention of inducing reliance, upon which [he] actually relie[d], consequentially sustaining a detriment."  *Frank Crystal & Co. v. Dillmann*, 84 A.D. 3d 704, 704 (2011).  Under New Jersey law, "[i]n order to establish a claim for fraudulent inducement, five elements must be shown: (1) a material representation of a presently existing or past fact; (2) made with knowledge of its falsity; and (3) with the intention that the other party rely thereon; (4) resulting in reliance by that party; (5) to his detriment."  *RNC Sys., Inc. v. Mod. Tech. Grp., Inc.*, 861 F. Supp. 2d 436, 451

(D.N.J. 2012). The elements of such a claim include a material representation that was made with knowledge of its falsity. Here, the only material representations alleged are those made by the CEO of Oath, now Verizon Media, in connection with Plaintiff's April 2018 employment agreement. *See* Am. Compl. ¶¶ 88–92.

The third cause of action, meanwhile, charges Defendants with a breach of the implied covenant of good faith and fair dealing. *See* Am. Compl. ¶¶ 94–99. As with the second cause of action, the claim hinges on Plaintiff's contention that Defendants "failed to provide the premium content required for him to satisfy the conditions of the Performance Bonus Program, undermining the spirit of the agreement between the parties and breaching the implied covenant of good faith and fair dealing." *Id.* ¶ 97. And Plaintiff rests his theory of a breach of the implied covenant of good faith and fair dealing on the alleged actions of Oath's executives, including the CEO, as they related to "the April 18, 2018 employment agreement and Performance Bonus Program." *Id.* ¶ 95.

Defendants assert that the second and third causes of action "fundamentally relate to the equity portion of Lucas's compensation, which was provided in consideration for agreeing to the contractual obligations with Verizon Communications." Def. Opp. Br. at 7. Plaintiff counters this by insisting that the "Premium Content Bonus" and the equity portion of his compensation are different and that the second and third causes of action relate to representations made about the former and not the latter. *See* Dkt. No. 28 ("Pl. Reply Br.") at 8; *see also* Am. Compl. ¶¶ 28, 53; Dkt. No. 11-1 at 2–3.

The allegations in the Amended Complaint, along with the supporting documentation that has been submitted to the Court for consideration of the parties' motions, support Plaintiff's contention that, at a minimum, the second and third causes of action arise from a different set of

facts than those that focus exclusively on the 2018 RSU Agreement. They also support Plaintiff's contention that the second and third causes of action relate to the circumstances that led to his agreeing to the employment agreement with Oath. For instance, Plaintiff alleges that that it was Tim Armstrong, Oath's CEO, who represented to Plaintiff that the company would be expanding its premium content offerings, and that it was Oath that offered additional compensation that was entirely contingent on the sales of the premium content offerings. *See* Am. Compl. ¶¶ 25–28. Plaintiff also contends that Oath had no intention to develop sufficient premium content and offered it only to induce Plaintiff to accept the position and the incentives-based compensation package. *Id.* ¶ 35. And according to Plaintiff, he relied on those representations when he decided to accept the employment offer. *Id.* ¶ 29. All of those facts bear on Plaintiff's fraudulent inducement of contract claim. Similarly, Plaintiff's third cause of action arises out of the negotiations that took place prior to his accepting the employment offer; he contends, in effect, that the representations that the company leading up to the April 18, 2018 employment agreement were not made in good faith because the company never intended to commit to developing its premium content offerings. *Id.* ¶¶ 35, 95–97. Even if parts of the Amended Complaint relate specifically to the non-competition provisions of the 2018 RSU Agreement, then, it cannot be said that Verizon Media is a nominal defendant.

Since the burden of proving the nominal nature of the non-diverse party is on the party making that claim and "doubts are to be resolved in favor of remand," *Am. Standard, Inc.*, 498 F. Supp. 2d at 715, the Court concludes that Defendants have not carried their burden of proving that Verizon Media is a nominal defendant for purposes of Plaintiff's remand motion. Defendants have fallen far short of showing "by clear and convincing evidence, either that there has been outright fraud committed in the plaintiff's pleadings, or that there is no possibility,

based on the pleadings, that a plaintiff can state a cause of action against the [allegedly nominal defendant] in state court." *Pampillonia*, 138 F.3d at 461.

### C. Verizon Media's principal place of business

Defendants next argue that even if Verizon Media were deemed a non-nominal defendant, the parties would be completely diverse because Verizon Media's principal place of business is in New Jersey. Def. Opp. Br. at 8–11. For purposes of diversity jurisdiction and removal, "a corporation shall be deemed a citizen of any state by which it has been incorporated and of the state or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1). It is undisputed that Verizon Communications is a Delaware corporation with its principal place of business in New Jersey. *See* Am. Compl. ¶ 5; Def. Opp. Br. at 8. It is also undisputed that Verizon Media is also a Delaware corporation. *See* Am. Compl. ¶ 6; Def. Opp. Br. at 1, 8. The dispute thus centers on whether Verizon Media's principal place of business is in New York, as Plaintiff contends, or in New Jersey, as Defendants contend.

The Supreme Court has held that for purposes of diversity jurisdiction, a corporation's "principal place of business" refers to "the place where a corporation's officers direct, control, and coordinate the corporation's activities," or its "nerve center." *Hertz Corp. v. Friend*, 559 U.S. 77, 92–93 (2010). The test is functional in nature; the corporation's "nerve center" should "normally be the place where the corporation maintains its headquarters—provided that the headquarters is the actual center of direction, control, and coordination . . . and not simply an office where the corporation holds its board meetings." *Id.* at 93.

"[A] subsidiary corporation has its own principal place of business for purposes of diversity of citizenship jurisdiction, unless it is merely an 'alter ego' or agent of the parent corporation." *OneWest Bank, N.A. v. Melina*, 827 F.3d 214, 222 (2d Cir. 2016) (quoting Charles

Alan Wright, et al., 13F *Federal Practice and Procedure* § 3625 (3d ed.)). "A corporation is an entity that is created by law and endowed with a separate and distinct existence from that of its owners." *American Protein Corp. v. AB Volvo,* 844 F.2d 56, 60 (2d Cir. 1998). The "presumption of separateness to a corporation . . . is entitled to great weight," and "in all but exceptional circumstances, the principal place of business of a corporation for purposes of 28 U.S.C. § 1332(c)(1) is determined without reference to the business of parent corporations." *Hungarian Broad. Corp. v. Coleman & Co. Sec.*, No. 96-CV-0048 (PKL), 1996 WL 374173, at *1 (S.D.N.Y. July 2, 1996).

The Court agrees with Plaintiff that Verizon Media's principal place of business is in New York. In his sworn declaration, Plaintiff asserts that "[a]ll major business decisions [at Verizon Media], including human resources decisions, emanated from Verizon Media's New York City Headquarters." Dkt. No. 10, Lucas Decl., ¶ 6. Plaintiff's sworn declaration also asserts that Verizon Media's entire executive team maintained offices in the company's New York City Headquarters—including the Chief Executive Officer, the Chief Business Officer, the Chief Financial Officer, and the Chief People Officer. Dkt. No. 10, Lucas Decl., ¶ 5. Plaintiff further notes that during his time as an executive with Verizon Media, "no Verizon Media Executives ever maintained offices in the state of New Jersey, and there are no Verizon Media offices in the state of New Jersey." *Id.* ¶ 7. These considerations are buttressed by some of the Defendants' own admissions. *See* Dkt. No. 24, Johnstone Decl., Ex. A (listing Verizon Media's CEO, Guru Gowrappan, as working out of New York City); Dkt. No. 24, Johnstone Decl., ¶ 10 ("Verizon Media's *highest level of management in New York* takes direction from a Verizon executive based in New Jersey." (emphasis added)). The mere fact that the subsidiary's executives report to the parent corporation's executives is insufficient to establish that the

subsidiary's "nerve center" becomes that of its parent. Thus, the fact that Verizon Media's highest-level executives, who exercise day-to-day control over and coordination of most of the company's operations, are in New York proves dispositive in applying the "nerve center" test.

None of Defendants' contentions to the contrary are persuasive. Defendants do not raise either an alter ego or agency exception to the general principle that a subsidiary's principal place of business is generally assessed separately from that of its parent corporation. And they contend that they are not ascribing Verizon Communications' principal place of business to Verizon Media. Def. Opp. Br. at 9–10. All of their arguments, however, are rooted in Verizon Media's relationship to Verizon Communications, and they set forth no independent basis why Verizon Media's principal place of business would be in New Jersey. As a result, their arguments cannot be reconciled with the fact that the "presumption of separateness to a corporation . . . is entitled to great weight." *Hungarian Broad. Corp.*, 1996 WL 374173, at *1.

For instance, Defendants argue that Verizon Media's principal place of business is in New Jersey "because that is the location of the top executives that control and direct the business activities of Verizon Communications," who, according to them, give some degree of direction to Verizon Media's executives. Def. Opp. Br. at 9–10. Defendants also point to several indicia of control that Verizon Communications exercises over Verizon Media, other than that Verizon Media's top executives generally take direction from top executives at Verizon Communications: that "Verizon Media is a business segment of Verizon Communications;" that Verizon Communications "exercises centralized control over the [RSU] Agreements;" and that "Verizon Media is also financially dependent on Verizon Communications in numerous aspects of its employees' compensation," including the equity compensation at the heart of the RSU Agreements. *Id.*

These arguments are at odds with *Melina* and with *Hertz Corp*. That Verizon Communications has ultimate decisionmaking authority over Verizon Media, and that, in some respects, Verizon Media's executives report to Verizon Communications' CEO, does not disturb the general principle that a subsidiary's principal place of business is assessed independently from that of its parent corporation. On the contrary, it is to be expected that a parent corporation will exercise some degree of ultimate authority over its subsidiary. Following *Hertz*, however, "courts that have sought to determine a subsidiary's principal place of business have focused on the location of day-to-day control and coordination of the company's business operations." *Evernu Tech., LLC v. Rohm & Haas Co.*, No. CIV.A 10-2635, 2010 WL 3419892, at *3 (E.D. Pa. Aug. 26, 2010); *see also DeLuca v. Allstate New Jersey Ins. Co.*, No. CIV.A. 11-4129, 2011 WL 3794229, at *4 (D.N.J. Aug. 25, 2011). To find that Verizon Media's principal place of business is tied to Verizon Communications' simply because Verizon Communications exercises some degree of supervision or control "would disregard the Supreme Court's instruction to determine the '*actual* center' of direction, control, and coordination." *St. Paul Fire & Marine Ins. Co. v. Scopia Windmill Fund, LP*, 87 F. Supp. 3d 603, 607–08 (S.D.N.Y. 2015).

A similar principle applies to Defendants' contention that Verizon Media is a "business segment of Verizon Communications." Def. Opp. Br. at 10; *see also* Dkt. No. 24, Johnstone Decl., Ex. B. While a "'division of a corporation does not possess the formal separateness upon which the general rule is based, and thus is not an independent entity for jurisdictional purposes,'" the "distinction between an incorporated subsidiary and an unincorporated division is important for determining diversity jurisdiction." *Breitman v. May Co. California*, 37 F.3d 562, 564 (9th Cir. 1994) (quoting *Schwartz v. Electronic Data Systems, Inc.*, 913 F.2d 279, 284 (6th Cir. 1990)). Defendants do not dispute that Verizon Media is incorporated in Delaware and is an

"indirectly wholly owned subsidiary of Verizon Communications"—not an unincorporated division of the company. *See* Dkt. No. 24, Johnstone Decl., ¶ 5. That Verizon Communications sees Verizon Media as a part of its overall business is, again, typical of parent corporations that have subsidiaries; if it were true that any time that a parent corporation described a subsidiary as part of its business, the general principle that a subsidiary is separate from its parent corporation for jurisdictional purposes would be rendered nearly null.

Nor is the fact that Verizon Media is "financially dependent on Verizon Communications in numerous aspects of its employees' compensation" or that Verizon Communications "exercises centralized control over the [RSU] Agreements" sufficient. *See* Def. Opp. Br. at 9–10. While a high degree of control *might* justify departure from the general rule, the record before the Court does not reflect the kind of "direction, control, and coordination" that the Supreme Court contemplated in *Hertz Corp.* 559 U.S. at 93. On the contrary, the Deputy General Counsel for Verizon Media concedes that "many day-to-day operations of Verizon Media are conducted by Verizon Media executives across the country," proffering only that "Verizon Communications exercises centralized control over the Agreements that are at issue in this litigation." Dkt. No. 24, Johnstone Decl., ¶ 11.

Defendants also argue that the Court should ascribe Verizon Communications' principal place of business to Verizon Media because the case involves "the enforceability of contractual obligations under the [RSU Agreements]" and "because [New Jersey] is the location of the top executives that control and direct the business activities of Verizon Communications, the entity named in these Agreements." Def. Opp. Br. at 10. That the case involves, in part, the enforceability of the RSU Agreements does not impact the application of the "nerve center" test. A corporation's citizenship, for purposes of diversity jurisdiction, does not turn on the issues

implicated in a particular case. The "nerve center" is a "single place." *Hertz Corp.*, 559 U.S. at 93. *See also Gentry v. Sikorsky Aircraft Corporation*, 383 F. Supp. 3d 442, 451 (E.D. Pa. 2019) ("[Plaintiff], in her Motion to Remand, misinterprets the *Hertz* test. . . . [A]s *Hertz* makes clear, the nerve center analysis is not case-specific: A corporation has one nerve center for all cases."). Defendants' argument is thus unavailing.

As already noted, "[a] party seeking removal bears the burden of showing that federal jurisdiction is proper." *Montefiore Med. Ctr. v. Teamsters Local 272*, 642 F.3d 321, 327 (2d Cir. 2011). Defendants have neither alleged nor argued that Verizon Media is the "alter ego" or "agent" of Verizon Communications. In light of the undisputed facts that Verizon Media's top-level management exercises control and coordinates the day-to-day activities of Verizon Media's operations, the Court concludes that Defendants have failed to carry the burden of showing that Verizon Media's relationship to Verizon Communications is so exceptional as to compel the Court to disregard the general principle that "[a] subsidiary corporation has its own principal place of business for purposes of diversity of citizenship jurisdiction." *Melina*, 827 F.3d at 222.

Consistent with this, the Court concludes that it lacks subject matter jurisdiction over this action due to a lack of complete diversity, and it accordingly remands the case to state court.

### D. Costs and Fees

Plaintiff also moves for costs and fees pursuant to 28 U.S.C. § 1447(c). *See* Pl. Br. at 6–7. When remanding a case, a court may, in its discretion, "require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). Whether to award fees under the removal statute "turn[s] on the reasonableness of the removal." *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005). As a general matter, this means that courts "award attorney's fees under § 1447(c) only where the removing party lacked

an objectively reasonable basis for seeking removal." *Id.* Courts will deny fee motions if a defendant had "at least a colorable basis for removal" and there is no evidence that removal was "merely an attempt to abuse or harass" the plaintiff or to force it to incur unnecessary expenses. *Koninklijke Philips Elecs. v. Digital Works, Inc.*, 358 F. Supp. 2d 328, 335 (S.D.N.Y. 2005) (internal quotations and citations omitted).

While the Court grants Plaintiff's motion to remand, his request for fees and costs is denied. Although the Court has determined that the clear weight of legal authority supports remanding this case, it does not deem Defendants' position to be so wholly frivolous or unreasonable as to warrant an award of costs and fees.

### E. Defendants' motion to dismiss or transfer

In light of the Court's conclusion that it lacks subject matter jurisdiction and that it must remand the case to state court, the Court denies as moot Defendants' motion to dismiss for improper venue or, in the alternative, transfer.

### III. Conclusion

For the reasons stated above, Plaintiff's motion to remand is GRANTED and Defendants' motion to dismiss is DENIED as moot. The parties' request for oral argument is denied. The Clerk of Court is respectfully directed to remand this case to New York Supreme Court, New York County and to close the case. This resolves Dkt. Nos. 9, 13, and 28.

SO ORDERED.

Dated: March 31, 2021
New York, New York

_____
ALISON J. NATHAN
United States District Judge